```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                       CASE NO. 25-cv-21385-CMA
 3

 4    YANLI GONG, et al.,               Miami, Florida

 5            Plaintiffs,               June 3, 2025

 6        vs.                           8:29 a.m. to 9:12 a.m.

 7    NCL (BAHAMAS), LTD.,              Courtroom 13-3

 8            Defendant.                (Pages 1 to 31)

 9   _____

                            MOTION HEARING
10            BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                 CHIEF UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

     FOR THE PLAINTIFFS:    FRANK BUTLER, ESQ.
13                          Frank D. Butler, P.A.
                            10550 US Highway 19 North
14                          Pinellas Park, FL 33782-3422
                            (727) 399-2222
15                          Fdblawfirm@aol.com

16   FOR THE DEFENDANT:     NOAH SILVERMAN, ESQ.
                            Foreman Friedman, P.A.
17                          2 South Biscayne Boulevard, Suite 2200
                            Miami, FL 33131-1804
18                          (305) 358-6555
                            Nsilverman@fflegal.com
19

     REPORTED BY:           STEPHANIE A. McCARN, RPR
20                          Official Court Reporter
                            400 North Miami Avenue
21                          13th Floor
                            Miami, Florida 33128
22                          (305) 523-5518
                            Stephanie_McCarn@flsd.uscourts.gov
23

24

25
```

<u>**I N D E X**</u>

<u>**WITNESSES**</u>

<u>**WITNESSES FOR THE PLAINTIFFS:**</u>                    <u>**Page**</u>
                                                          **--**

<u>**WITNESSES FOR THE DEFENDANT:**</u>                    <u>**Page**</u>
                                                          **--**

<u>**EXHIBITS**</u>

<u>**EXHIBITS IN EVIDENCE**</u>              <u>**IDENTIFIED**</u>   <u>**ADMITTED**</u>
                                              **--**             **--**

<u>**MISCELLANEOUS**</u>

                                                          <u>**Page**</u>
Proceedings.........................................   **3**
Court Reporter's Certificate........................   **31**

1    (The following proceedings were held at 8:29 a.m.)

2        THE COURT:  Yanli Gong v. NCL.

3        Counsel, please state your appearances.

4        MR. BUTLER:  Yes, Judge.  For the estate and those

5    Plaintiffs, Frank Butler.

6        THE COURT:  Good morning, Mr. Butler.

7        MR. SILVERMAN:  Good morning, Your Honor.  Noah

8    Silverman on behalf of NCL.

9        THE COURT:  Good morning, Mr. Silverman.

10       We have this morning the Defendant's motion to dismiss

11   and/or strike the Plaintiffs' complaint.  I asked you gentlemen

12   to go out and speak to each other while we waited to begin to

13   see if you could narrow any of the issues.  Have any of the

14   issues been narrowed?

15       MR. BUTLER:  If I may, Your Honor.

16       THE COURT:  Yes.

17       MR. BUTLER:  With regard to the Plaintiffs' claims for

18   the widow and the mother-in-law and the two children, as far as

19   negligent infliction of emotional distress, those type of

20   damages, that -- we need to replead those a little bit more

21   fully.  I will get with the family and make sure of the more

22   specific facts than we have in the complaint right now.

23       THE COURT:  Is that going to the argument that the

24   Defendant makes at Page 5 of the motion, or is that to address

25   the arguments involving the claim made for intentional

```
 1    inflction of emotional distress?
 2            MR. BUTLER:  The intentional inflction of emotional
 3    distress, we will replead that --
 4            THE COURT:  All right.
 5            MR. BUTLER:  -- if we have the facts to be able to
 6    support that.
 7            THE COURT:  All right.  So as to Count 4, that claim
 8    is dismissed with leave to amend.
 9            MR. BUTLER:  Thank you, Your Honor.
10            THE COURT:  Okay.  So we don't have to address that
11    one.
12            So let's begin by addressing the Defendant's first
13    argument with regard to Death on the High Seas Act and the
14    argument that the estate is not entitled to recover
15    nonpecuniary damages.
16            Mr. Silverman, I will hear from you.
17            MR. SILVERMAN:  Thank you, Your Honor.
18            DOHSA and the legion of case law citing to DOHSA is
19    very clear that you're not allowed to have nonpecuniary
20    damages; in particular, the mental distress damages that
21    Mr. Butler's clients have alleged in this claim.  It's simply
22    not allowed under maritime law.  There is no question DOHSA
23    applies.  It was pled in the complaint.  This took place in the
24    foreign territorial waters of a foreign country and, therefore,
25    DOHSA applies.
```

| | |
|---|---|
| 1 | THE COURT:  Right.  So this is not a motion to dismiss |
| 2 | the DOHSA count.  It's a motion to strike the request.  For |
| 3 | nonpecuniary damages, that's contained within that count, |
| 4 | correct? |
| 5 | MR. SILVERMAN:  Yes, Your Honor. |
| 6 | THE COURT:  All right.  And Mr. Butler? |
| 7 | MR. BUTLER:  Your Honor, we -- |
| 8 | THE COURT:  I'm sorry.  Could you use the microphone? |
| 9 | Just put it closer to you so we can hear you better.  Thank |
| 10 | you. |
| 11 | MR. BUTLER:  Yes. |
| 12 | We cited the *Blow vs. Carnival* case, which stood for |
| 13 | the proposition that lost household support -- |
| 14 | THE COURT:  I can't hear you. |
| 15 | MR. BUTLER:  -- lost household support from the |
| 16 | deceased, love, guidance, support, personal severe mental |
| 17 | distress with physical manifestation was considered as |
| 18 | nonpecuniary damages under DOHSA. |
| 19 | And we basically said in our response and our reply |
| 20 | that the Defense is -- is, under DOHSA, stating the damages too |
| 21 | strictly and that there can be room for severe emotional |
| 22 | distress with physical manifestations that the *Blow* case said |
| 23 | are not nonpecuniary and that damages for mental pain and |
| 24 | suffering were recoverable to the extent it's not about the |
| 25 | deceased.  It's about the people who were there. |

```
 1              THE COURT:  And the Blow case, Stephanie, is B-L-O-W.
 2              MR. BUTLER:  It is, Your Honor.  And that is in our
 3    brief on Page 3.
 4              And there are a couple of others.  Kennedy vs.
 5    Carnival.  I'm sorry.  There is that one other one.
 6              THE COURT:  So you're both in agreement in essence
 7    that the only damages that you're entitled to under DOHSA are
 8    pecuniary damages, right?
 9              MR. SILVERMAN:  That's not what Mr. Butler is arguing.
10              MR. BUTLER:  No.  We're also arguing nonpecuniary
11    damages.  What I just enumerated is the loss of household
12    support, personal severe mental distress with physical
13    manifestations, and that was held not to be nonpecuniary in
14    Blow.
15              THE COURT:  How do you address all of the cases cited
16    by the Defendant?  The Defendant cites, for example, Nichols,
17    N-I-C-H-O-L-S, v. Carnival.  The Defense cites Kennedy v.
18    Carnival.
19              Mental pain and suffering, loss of companionship,
20    those damages cannot be recovered under DOHSA.  Those are
21    indeed nonpecuniary.  You're not seeking those or you are?
22              MR. BUTLER:  We are seeking those damages.
23              THE COURT:  And you're seeking those under the
24    authority of Blow?
25              MR. BUTLER:  Yes.
```

```
 1              THE COURT:  And what do you say to that,

 2   Mr. Silverman?

 3              MR. SILVERMAN:  That is not what Blow stands for, Your

 4   Honor.  The cases are legion that nonpecuniary damages are not

 5   allowed under DOHSA.  The one aspect that Mr. Butler did cite,

 6   loss of household support, is a pecuniary damage, and we

 7   haven't argued that.  We're arguing the mental distress and all

 8   of those damages that flow from mental distress.  None of that

 9   is recoverable under DOHSA.

10              THE COURT:  I think the Defendant has the better

11   argument here, Mr. Butler.  The claim is certainly not

12   dismissed.  However, you cannot recover nonpecuniary damages.

13   And as I just referenced, with regard to the case law with

14   Nichols and with Kennedy, damages for loss of companionship,

15   damages from mental pain and suffering are indeed nonpecuniary

16   and, hence, not recoverable under DOHSA.  You have other counts

17   in that complaint that will be seeking those types of damages,

18   and we'll get to those.

19              So the Defense is correct.  Those -- to the extent

20   those damages are sought in your DOHSA count, they are

21   stricken.

22              MR. BUTLER:  Yes, Your Honor.

23              THE COURT:  The next argument is that the complaint is

24   a shotgun pleading.  And I know you've made these arguments

25   before, Mr. Silverman, but in my estimation, a shotgun pleading
```

```
 1    exists and arises where you incorporate the preceding
 2    allegations of the prior counts in addition to the general
 3    allegations.  It's not a shotgun pleading for every count to
 4    reincorporate the general allegations, and that's what we have
 5    here.
 6              MR. SILVERMAN:  Well, Your Honor, I would disagree.  I
 7    think some courts actually do find that incorporating every
 8    factual allegation into every count, even though all those
 9    allegations have nothing do with the count, is, in fact, a
10    shotgun pleading.
11              THE COURT:  I disagree.  And you're certainly capable
12    of responding to the complaint, as you have done most capably
13    in your motion in understanding what each of the claims is.  So
14    I will not dismiss the complaint on the basis that it's a
15    shotgun pleading.
16              Then the next argument is count -- addresses Counts 1
17    to 3.  So let's begin with the -- with the arguments as to
18    Count 2 for gross negligence.
19              I will hear your arguments now.
20              MR. SILVERMAN:  Yes, Your Honor.
21              They haven't pled a count for gross negligence.  They
22    haven't pled any facts that would support a claim for gross
23    negligence.  They've pled an ordinary negligence claim; in
24    fact, the same allegations that they pled factually in the --
25    of their two negligence claims.
```

1          It's just a simple, garden-variety, ordinary

2     negligence claim.  There is absolutely no basis in fact pled in

3     this complaint that would give rise to a gross negligence

4     claim.

5          THE COURT:  Well, you saw the arguments that

6     Mr. Butler makes in his response to your motion.

7          Unlike other cases here, the Plaintiffs indicate or

8     allege that your client was aware the Horseshoe Bay Beach

9     presented an increased risk of injury of more than unusual

10    peril -- but despite that knowledge, your client promoted that

11    beach -- that you all knew the risk of death from warnings

12    issued by multiple government agencies and news reports of

13    prior incidents and your client's close interactions with the

14    Bermudian government and tourist programs, and, nonetheless,

15    again, you actively encouraged your passengers to visit the

16    area.

17          Why is that not sufficient for gross negligence?

18          MR. SILVERMAN:  Because those are the same allegations

19    that they have for general ordinary negligence.

20          THE COURT:  Well, that's because, again, they

21    incorporate all those allegations into each of the counts.  But

22    that's not an issue.  We're looking to see are there

23    allegations that support this count within the general

24    allegations.

25          MR. SILVERMAN:  Right.  And all they've stated are

1    conclusory allegations.  And there is also issues with what

2    their pleading factually -- which we addressed further in the

3    motion.  But that doesn't state a claim for gross negligence.

4            We're aware of a risk at a beach.  It's just not gross

5    negligence.  It's like a claim, and it wouldn't be allowed

6    under DOHSA, anyway.  There would be no additional damages for

7    gross negligence.  DOHSA is the sole exclusive remedy once it

8    is applied for the estate.

9            THE COURT:  All right.  Mr. Butler?

10           MR. BUTLER:  Yes, Your Honor.

11           We -- we do believe that we have stated enough facts

12   to make a claim for gross negligence.  And, in fact, I would

13   add on to what the Court said that not only was there knowledge

14   on the part of the cruise line, but they came to my client to

15   provide them information that they have vetted these different

16   excursions, they were familiar with this one, and they

17   basically said -- we put the language right in the complaint.

18           Not only stated it; alleged it in our paragraphs.  But

19   took the information that the clients looked at from the NCL

20   website and put it into the complaint itself, which told

21   these -- this family with the two kids to -- You can trust us.

22   We've vetted these excursions.  Don't do the other excursions.

23   Do the excursions that we have vetted.

24           And they even say things with regard to the safety of

25   them.  It's going to be better if you go with us rather than on

1   just some random excursion.  And so they've really

2   affirmatively reached out and went beyond just having notice

3   and so forth as the typical negligence case and more or less

4   sold this family on the idea of, Come to this excursion.

5          In fact, if you look at the -- in the complaint on --

6   it's Paragraph 19.  We talk about the difficulty scale.  And

7   they do call this an excursion, and we took that from the

8   Horseshoe Bay Beach detail that NCL put together.  It says it's

9   an excursion.  It says it's going to be just beach and

10   swimming, and it is obviously more than that, and it says it

11   was easy.

12          So they didn't just sell the excursion.  They told us

13   it was going to be easy for this family to do this.  They went

14   above and beyond simple negligence here.

15          MR. SILVERMAN:  Your Honor --

16          THE COURT:  Yes.

17          MR. SILVERMAN:  These are the same allegations in any

18   shore excursion case.  This is not above simple negligence or

19   ordinary negligence.  Every case would be a gross negligence

20   case if Your Honor felt that those allegations rose to the

21   level of gross negligence for shore excursions.

22          One other missing piece from this compliant is whether

23   or not these Plaintiffs ever purchased an excursion from NCL.

24   They tiptoe around that, but there is nothing in this complaint

25   that states that they actually took an NCL excursion.

1          THE COURT:  Did they, Mr. Butler?  You would know.

2          MR. BUTLER:  Your Honor, that's why we say in

3    Paragraph 20 when NCL describes this as an excursion -- whether

4    they paid money for it or not or took NCL's offering of going

5    on this -- this trip, this excursion -- that that is what they

6    relied upon.  I can't tell you if there was money exchanged for

7    that -- for the travel part, but there always is.

8          And the second part of this is that NCL is making

9    money by taking these passengers to these different ports of

10   call.  That's how they make their money.  So when they go to

11   these ports of call, instead of just ferrying passengers, you

12   know, 100 miles offshore and 100 miles back, this is part of

13   how they make their money.

14         Whether they paid for this -- paid NCL for this

15   specific thing I would have to find out.  We should know the

16   answer to that already, I would admit.

17         THE COURT:  Well, here it sounds like they didn't

18   purchase the shore excursion sold by the cruise line, right?

19         MR. BUTLER:  It is -- they are sold by the cruise

20   line.  We've had cases where they have been sold prior to

21   getting on.  And I know my clients were looking at this prior

22   to getting on and they said, This is something we want to do,

23   when they got on board.  We say this in the complaint, that

24   they relied upon preboarding representations by NCL.  They

25   relied on representations by representatives of NCL when they

got on the boat.

Whether there was a -- whether there were $50 per person exchanged, I don't know the answer to that today.  We should, really, but I don't think that it changes the dynamic that this is -- NCL calls it an excursion.  NCL does.  It's in Paragraph 20 of the complaint.  NCL calls it an excursion.

THE COURT:  NCL what?  I'm sorry.

MR. BUTLER:  NCL calls it an excursion, and it's in Paragraph 20 that we included that language.  They call it beach and swimming, and they said it was easy.  And it's entitled "Horseshoe Bay Beach Transfer Details."

THE COURT:  So to state a cause of action for gross negligence, you need to allege the existence of circumstances which together constitute an imminent or clear and present danger amounting to more than the normal and usual peril, the showing of knowledge or awareness of the imminent danger by the Defendant and an act or omission that occurs in a manner that evinces a conscience disregard of the consequences.

Those are the elements.  The Defendant cites to them in the motion to dismiss, citing to *Chubb*, C-H-U-B-B, *Seguros*, S-E-G-U-R-O-S, *Chile*, C-H-I-L-E.

I think you're -- it's a close call, but the Plaintiffs do meet those allegations barely.  And so I will allow the claim to -- to be stated.

Then we go on to the next argument, which is lack of

1   notice.

2            MR. SILVERMAN:  Yes, Your Honor.  There's a lot of

3   words in this complaint, but none of it amounts to notice.

4   They cite to prior incidents without providing any facts

5   relating to prior incidents or how NCL would know of any of the

6   prior incidents, whether any of them occurred at the same

7   beach.  It's the same thing over and over again.

8            People cite to prior incidents in these complaints all

9   the time without providing the facts.  The law is pretty clear.

10  You actually have to provide some factual allegations that

11  would actually put the cruise line on notice that an incident

12  occurred.

13           So, for instance, somebody drowned at that beach.

14  Just because they drowned at the beach doesn't mean NCL is

15  going to know about it.  If it involved an NCL passenger and it

16  was within a reasonable time frame, that may provide notice to

17  the cruise line, but just simply saying there were prior

18  incidents at beaches in Bermuda or at this particular beach is

19  not sufficient to establish notice.

20           Plaintiff also goes into they have a relationship with

21  the Bermudian tourist board, and because of that, they knew

22  this beach was dangerous.  That is a leap without any factual

23  support whatsoever.  There are no factual allegations that NCL

24  was ever told of any danger to this particular beach by the

25  government of Bermuda, by the tourist board.

```
 1              They tried to cite to random articles on the

 2   Internet.  There is no obligation for Norwegian or any other

 3   ship owner to scour the Internet for any of this stuff.  They

 4   simply throw the kitchen sink of -- of speculation into the

 5   complaint without any actual facts that NCL was on notice and

 6   was aware of the danger specific to this beach.

 7              THE COURT:  I will hear from Plaintiff's counsel.

 8              MR. BUTLER:  Yes, Your Honor.

 9              I actually think this is the strong suit of the

10   complaint; the fact that there was so much prior notice here.

11   We start with Paragraph 17 of the complaint wherein NCL says,

12   We work closely with our, quote, destination partners, and,

13   quote, To keep our guests as safe as possible, we highly

14   recommend taking our company-organized shore excursions as a

15   more controlled environment for you to enjoy your time in each

16   of the destinations.

17              And we -- the complaint is just replete with notice of

18   prior drowning deaths there.  The complaint demonstrates that

19   NCL's been coming to the island since at least 1998, has two or

20   three renewed contracts.

21              They say -- not us.  They say that they deal with

22   the -- let me say the exact verbiage that they used on their

23   website.  NCL works closely with local government and health

24   agencies.  There is -- there is information put out by the

25   health -- basically the health ministry of Bermuda that we've
```

```
 1   had drownings here.

 2           And they say -- this is in the complaint.  They say

 3   that there are no lifeguards in March of the year.  There

 4   aren't any.  The lifeguards don't show up until May through

 5   October and that is known.

 6           And so this is -- I would hesitate to --

 7           THE COURT:  Where do you allege about the lack of

 8   lifeguards?  What paragraph, again?

 9           MR. BUTLER:  Paragraph 44.

10           THE COURT:  44.

11           MR. BUTLER:  It says --

12           THE COURT:  No.

13           MR. BUTLER:  I'm sorry.  44 or 45.  In 44, we allege

14   NCL had notice of the dangerous conditions through public

15   warnings from multiple government entities, the available

16   weather and sea conditions forecast, including for that

17   specific day, a variety of cruise ship passenger reports and

18   prior similar incidents.

19           THE COURT:  I'm sorry.  Where do you allege that there

20   are no lifeguards during those months and that the Defendant

21   knew that?

22           MR. BUTLER:  It is -- 45 is --

23           THE COURT:  Most people in Bermuda don't swim in the

24   sea until after Bermuda Day in late May, but that doesn't tell

25   me that there are no lifeguards and that the Defendant knew
```

```
 1    that.
 2              MR. BUTLER:  It's in Paragraph 48.  I apologize.
 3              THE COURT:  48?
 4              MR. BUTLER:  48.
 5              THE COURT:  Oh.
 6              MR. BUTLER:  This is the Bermudan government issuing
 7    warnings on social media about lifeguards have been extremely
 8    active.  This is two years before our incident.
 9              THE COURT:  Right.  But where does it say that they
10    will not be there when your client -- when the decedent was
11    there?
12              MR. BUTLER:  We --
13              THE COURT:  I think that's on Paragraph 50, right?
14              MR. BUTLER:  Yes.  Right.
15              THE COURT:  The U.S. Consulate in Bermuda --
16              MR. BUTLER:  Yes.
17              THE COURT:  -- in April 2024, less than a month after
18    the incident.  So that doesn't furnish notice to the Defendant
19    the month before.
20              MR. BUTLER:  Just one second.
21              Your Honor, for that -- for that part of it from the
22    Bermudian Government, NCL has said they are working with those
23    authorities and talked to -- or represented to our client
24    that -- that they were working with local authorities and so
25    forth.
```

1          And as we said before, the totality of the facts are

2     that the vessel regularly stops there and they are going to

3     know whether there are lifeguards or not there.  And this

4     announcement made a month after the death is not the same as

5     NCL not knowing that there aren't lifeguards there in March.

6          And so from the totality of the prior drownings --

7     which we listed out, I think, eight or ten of them from the

8     social media posts, which NCL has looked at before.  We say in

9     our legal brief that they have used that as a shield, and when

10    we're trying to use it as a sword now --

11         THE COURT:  Where in the complaint do you allege that

12    all of these social media posts that you quote from in

13    Paragraph 48 -- that the Defendant would look at those and know

14    about those?

15         MR. BUTLER:  We're saying that they had access to it.

16         THE COURT:  Having access to information doesn't mean

17    one is informed.

18         MR. BUTLER:  50 -- Paragraph 57 is where we list all

19    of the prior incidents, prior complaints on social media.  What

20    we have said in our legal brief is that -- hold on a second.

21         Here is our brief at Page 10.  Courts in the district

22    and even the Defendant itself, NCL itself, has found online

23    reviews could or did support a finding a cruise line's notice.

24    That's *Thayer v. NCL (Bahamas)*, and that was in 2020.

25         And then finding -- that report and recommendation was

1    finding notice based on allegations of online reviews from the

2    website alltrails.com -- not familiar with that one -- and

3    Tripadvisor, which we cite to for our ten or so notifications

4    where previous passengers of NCL complained about the subject

5    excursion being dangerous.  That's from *Healy vs. NCL*.

6            Then we say again on Page 10, continuing, Defendant,

7    NCL, arguing in another matter that it was not on notice

8    because, among other things, there was no record of any

9    publicly available reviews for that subject tour.

10           So that's where they tried to use it as a shield,

11   saying, We've looked and we didn't see any, and now they're

12   saying, Oh, we just didn't look at all, which is -- it appears

13   they've been doing this for a while.

14           The cruise lines, naturally speaking, are worried

15   about their reputation and what's being said about them.  To

16   believe that they're not looking at what people are saying

17   about them on the major -- on the major media outlets is

18   just -- I mean, the totality of it is we've pled way more

19   notice than we would ever get amongst any complaint here.

20           THE COURT:  Pretty extensive.  I would agree with you.

21   It's pretty extensive.  Mr. Silverman is doing his job in

22   arguing that it's not quite enough, but --

23           MR. SILVERMAN:  Your Honor, if I could address some of

24   this.

25           THE COURT:  You may, certainly.

```
 1          MR. SILVERMAN:  I mean, first, the representations is

 2    a different issue, what we represented to the Plaintiff.  But

 3    none of these prior incidents are alleged to have been NCL

 4    passengers.  None of them have been alleged to have been

 5    reported to NCL.

 6          What Mr. Butler is saying is because there are things

 7    out there on social media -- none of which -- half of which are

 8    not even similar to what we're talking about here.  This is

 9    also a beach.

10          THE COURT:  Um-hmm.

11          MR. SILVERMAN:  Okay.  So any body of water at any

12    given point in time -- whether it's Miami Beach, whether it's

13    Laguna Beach, whether it's a beach off of New York -- is going

14    to have different weather conditions at any given point.  None

15    of these state that they're NCL passengers.

16          THE COURT:  Paragraph 64.

17          MR. SILVERMAN:  Okay.  Paragraph 64, from Connecticut,

18    was knocked over by a wave and pronounced dead.

19          THE COURT:  I'm sorry?  Paragraph 64 of the complaint.

20    Those two were NCL passengers, both in Bermuda.

21          MR. SILVERMAN:  Okay.  Well, 64, I don't think it says

22    that it was a NCL passenger, but --

23          THE COURT:  Yes.  It says one passenger aboard a

24    similar NCL cruise from New York to Bermuda docking at the same

25    Royal Naval Dockyard nearly died due to drowning in Bermuda.
```

```
 1            MR. SILVERMAN:  Okay.

 2            THE COURT:  And a 56-year-old passenger from the same

 3   NCL ship died on an NCL snorkeling expedition.

 4            MR. SILVERMAN:  And that's exactly why these don't get

 5   them there.  Just because somebody died in the country of

 6   Bermuda does not make this a prior similar incident that could

 7   even remotely establish notice that this particular beach was

 8   dangerous.

 9            THE COURT:  Right.  If this was the only allegation,

10   all right, but it's not.  As Mr. Butler has said, this

11   complaint goes on and on and on and on about how it is that

12   your client was put on notice and aware and made

13   representations that it worked closely with the Bermuda

14   authorities to ensure safe shore excursions and labeled this

15   one as easy.

16            So they did some investigating, and the Plaintiff is

17   saying you all are on notice.  I know you dispute it.  The

18   question is getting it past the pleading stage.

19            MR. SILVERMAN:  Understood.  And that's what's wrong

20   with the complaint, though, Your Honor.  The first step is

21   these people were not on an NCL shore excursion.  It has not

22   been alleged that they were on an NCL shore excursion or that

23   we've -- so we don't get to the first base here.

24            They have a negligent misrepresentation claim based on

25   this.  They have a nondelegable duty claim based on this.  But
```

```
 1    they haven't even alleged that they purchased an excursion,
 2    that they relied on any representations from NCL in purchasing
 3    the excursion from them, none of it.
 4         THE COURT:  That's your strongest point, not that your
 5    client lacked notice of the dangers of swimming on this beach
 6    in Bermuda, right.
 7         And I think that's the problem Mr. Butler has.  You
 8    have to go back to your clients and find out, Did you all
 9    purchase an NCL excursion and did the decedent rely on those
10    representations to take that NCL excursion and died, right?
11    You don't make those allegations, and you haven't answered my
12    question directly.
13         MR. BUTLER:  If I may speak to that.
14         THE COURT:  Yes.
15         MR. BUTLER:  The case law says -- I don't know that I
16    have it right here with me today.  The case law says the cruise
17    line must warn passengers about dangers of which they know and
18    should reasonably know off the ship.
19         So there was a time where cruise ships were stopping
20    in Jamaica and it was a particularly violent time, a lot of
21    gangs going on.
22         THE COURT:  I recall.  Yes.
23         MR. BUTLER:  And the fact that the passengers who
24    ended up on the wrong side of the gangs did not purchase
25    anything from the cruise line other than getting there did not
```

1    relieve the cruise line of warning their passengers of dangers

2    about which they knew or should've known.  It was widely known.

3    Certainly, to the cruise lines it would have been widely known

4    that it was dangerous to be in Jamaica during that time.

5          THE COURT:  Right.  I recall.

6          MR. BUTLER:  Yeah.

7          THE COURT:  So that's the theory you're traveling on.

8    My client didn't purchase an NCL shore excursion.  Fine.  And

9    if you all made representations that the NCL shore excursion to

10   this particular body of water would be easy and you made

11   representations -- and failed to make representations that, in

12   fact, a lot of drownings take place there.  Beware.

13         MR. BUTLER:  Yes.

14         THE COURT:  In any event, those allegations, in my

15   view, are sufficient, Mr. Silverman.  I won't dismiss the

16   complaint for that reason.

17         MR. SILVERMAN:  Okay.

18         THE COURT:  Then you make the argument again that the

19   Plaintiff improperly seeks to impose heightened duties of care

20   on NCL.  And I use the word "again" because you've made these

21   arguments to me before in the past.

22         And I think Mr. Butler was very accurate in quoting

23   back my own case law, my own decisions where I've declined to

24   roll up my sleeves and go line item by line item saying, This

25   one is a heightened duty of care.  That one's not, if the

1  complaint otherwise states a cause of action.

2          MR. SILVERMAN:  I understand, that, Your Honor.  As

3  Mr. Butler just said, he's proceeding under a theory that it's

4  a failure to warn of conditions they knew or should have known

5  about.  That is the only theory he can proceed upon.

6          THE COURT:  All right.  But I'm not going to start

7  saying, This one works.  This one doesn't, if the complaint

8  otherwise states a claim.  I've already declined to do that in

9  written decisions, published decisions that I know you're aware

10  of, so I won't do it here either.

11          The next one is Count 5, negligent misrepresentation.

12          MR. SILVERMAN:  Usual issues with the negligent

13  misrepresentation claim, Your Honor.  First is under Rule 9(h)

14  that require to plead it with specificity.  They have not done

15  so.  How, when, where, why, what they read, when they read it,

16  also that they relied on it in purchasing an excursion.

17          THE COURT:  Or going to that beach.

18          MR. SILVERMAN:  Correct.

19          THE COURT:  Right.

20          MR. SILVERMAN:  That's the first level.  The second

21  level, Your Honor, is that a lot of what they are asserting is

22  not considered actionable.  Your Honor's case of *Balaschak* is a

23  perfect example of that.  Stating that something is safe or

24  reliable certainly does not get them to a negligent

25  misrepresentation claim, even if they have properly pled the

1    specific facts they were required to plead.

2           THE COURT:  All right.  Mr. Butler?

3           MR. BUTLER:  Yes, Your Honor.

4           THE COURT:  And *Balaschak*, by the way, Stephanie, is

5    B-A-L-A-S-C-H-A-K.

6           So you can't proceed just on the basis of some

7    allegation that it's safe to go swimming there, Mr. Butler.

8    What's the negligent misrepresentation beyond that?

9           MR. BUTLER:  The misrepresentation is that they

10   actually vetted the scene and they hadn't.

11          THE COURT:  That they actually --

12          MR. BUTLER:  That they actually vetted the scene to

13   know that it was safe and they hadn't.  That was the

14   representation as to who, what, when, why and where.  The who

15   is to our folks.  The where is about on board, before they got

16   on board, on their website and the -- that's the how they did

17   it.  And when they did it was before and after they got on

18   board.  And the why is, again, about the -- getting the money

19   for the cruise from those folks to come to this location.

20          But the additional step is that they made this

21   additional representation.  They didn't just say, Here is an

22   excursion you can go on.  The complaint is very clear about

23   that.  They made representations that, You want to trust us

24   because we've vetted these excursions.  Don't go on these other

25   ones -- they say that -- don't go on the other ones.  And we're

1   going to make these safer -- or you're going to be in a safer

2   place if you go with us on these, and they hadn't vetted it at

3   all.

4          And if they did -- it seems to me, Your Honor, that

5   they're saying, We didn't have knowledge about all these prior

6   incidents, but yet they make statements that, We've vetted

7   these -- we vetted the excursion.  We dealt with the local

8   authorities, and we're in touch with them.  You can trust us.

9          It can't be both.  It can't be.  And that is the

10  misrepresentation.  It's that it was safe and they vetted it

11  and they didn't.

12         MR. SILVERMAN:  And, Your Honor, they have not alleged

13  any specifics whatsoever as to how, what, when or why.  What

14  did they read?  What are they saying said this excursion site

15  or this beach was safe?  Because these facts are important.

16  Because NCL's website or promotional materials doesn't say,

17  We've vetted this beach.  It doesn't say that the safe is

18  site -- that the site is safe, none of that.

19         And that's the issue with this negligent

20  misrepresentation claim -- is they actually do not meet the

21  pleading requirements under Rule 9(h) to state what they read,

22  when they read it and what they relied on in taking an

23  excursion, which they did not clearly take in this instance.

24         THE COURT:  I do agree with the Defendant here,

25  Mr. Butler.  You need to plead this cause of action with

```
 1    greater particularity than you have done so rather than

 2    generally saying before they boarded the ship, they looked at

 3    some website.  So you'll need to replead this one with greater

 4    specificity as required for a negligent misrepresentation

 5    claim.

 6              MR. BUTLER:  May I be heard on that, Your Honor?

 7              THE COURT:  Yes.

 8              MR. BUTLER:  I don't want to step over your ruling,

 9    but --

10              THE COURT:  It is a ruling, but try not to step over

11    it.

12              MR. BUTLER:  So we do state in Paragraphs 15, 16, 17,

13    18 and so forth -- and it starts with the, Why book with us?

14    And that's really the key question here, Why book with us for

15    these excursions?  It's because they have vetted this, and

16    we -- I don't think we can make it more specific than this.

17              And we've already put in a ton of information about

18    how -- Paragraph 14, electronic tickets encourage them to visit

19    NCL-selected shore excursions in Bermuda, that NCL excursions

20    have added benefits.  They're provided by safer and reliable

21    operators.

22              On its website, Paragraph 15, they publish promotional

23    information material about such excursion, including the

24    Horseshoe Bay Beach shore excursion.  And so we go on to say

25    that NCL encourages passengers to visit these shore excursions
```

```
 1    selected specifically by NCL as opposed to venturing out on
 2    their own and so forth.
 3            And it even comes down to saying that assuring
 4    passengers that these excursions are handpicked by NCL, who,
 5    quote, works with reputable local tour operators --
 6            THE COURT:  You are stepping over my ruling,
 7    Mr. Butler.  And I have reviewed your complaint.
 8            MR. BUTLER:  Okay.
 9            THE COURT:  Paragraph 22 says Mr. Shin and Ms. Gong
10    looked at the NCL information prior to choosing Horseshoe Bay.
11            MR. BUTLER:  Right.
12            THE COURT:  What information, when, what exactly was
13    it that they read and considered, what date.
14            MR. BUTLER:  That's what we're saying, Judge.
15            MR. SILVERMAN:  Whether they selected an excursion
16    based on that.
17            THE COURT:  I understand.  So I've already ruled on
18    this count.
19            MR. BUTLER:  That's what we're saying.  In
20    Paragraph 20, this is what they were looking at.
21            THE COURT:  I've already ruled on this count,
22    Mr. Butler.  You need to plead it with more particularity.
23            MR. BUTLER:  Okay.  All right.
24            THE COURT:  It's a fraud-based claim, right.  You
25    deceived us.  So you needed to say the who, the what, the when,
```

the where, the how.  Because this is apparently not an

excursion that your client took, this so-called easy one.  So

explain how it is, give us those details and give the Defendant

those details that Rule 9(b) requires.

MR. BUTLER:  We'll fill it in, Your Honor.

THE COURT:  Okay.  And then Count 6, breach of

nondelegable duty.  Is that a cause of action?

MR. SILVERMAN:  We don't believe it's a cause of

action.

THE COURT:  Is it a separate cause of action is my

question.

MR. SILVERMAN:  Your Honor, we don't believe it's a

separate cause of action.  There's one duty under maritime law

in a passenger negligence claim, and that's the duty of

reasonable care under the circumstances.

I think that, in the past, some courts have when there

is additional requirements made found on oral representation

that there may be an additional duty based upon a oral

contract.  That is not the case here.  I think that's the

*Witover* case.  Here they're not even alleging that they

purchased an excursion.

THE COURT:  *Witover*, W-I-T-O-V-E-R.

Yes.

MR. SILVERMAN:  The only contract I can discern from

reading the complaint -- and it tiptoes around all of this --

1    is the cruise ticket, meaning the ticket to go on the cruise.

2    If that's the case, it's very clear from the cruise ticket

3    that -- that excursions are operated by independent

4    contractors.

5            There's no contract or consideration for a contract

6    with respect to these Plaintiffs going to this beach.  I don't

7    see how they get to a complaint for nondelegable duty based on

8    contract.

9            MR. BUTLER:  Yes, Judge.  I think we can plead that

10   with more specificity as well.

11           And, again, we don't know the answer as to whether

12   they actually purchased the excursion here or whether there was

13   a charge for it.  I should say whether there was a charge for

14   it or is it one that -- this is -- my understanding is this is

15   an excursion put on by NCL itself.

16           THE COURT:  It is?

17           MR. BUTLER:  That's what my understanding is.  We

18   should've said that in the complaint.

19           THE COURT:  All right.  So when you replead, go ahead

20   and replead this one.  I am frankly at a loss as to what this

21   cause of action does, is based on.

22           MR. BUTLER:  I understand.

23           THE COURT:  You have DOHSA; you have gross negligence;

24   you have negligence.  What is this one?

25           MR. BUTLER:  I'll talk to counsel about that one as

1   well.

2          THE COURT:  All right.  Very good.

3          Is there anything else on the motion to dismiss or

4   strike?

5          MR. SILVERMAN:  No, Your Honor.

6          MR. BUTLER:  No, Your Honor.

7          THE COURT:  How much time do you need to replead,

8   Mr. Butler?

9          MR. BUTLER:  Seven days.

10         THE COURT:  Seven days.  Very well.

11         Thank you very much.

12         MR. BUTLER:  Thank you, Judge.

13         MR. SILVERMAN:  Thank you for your time, Judge.

14      (The proceedings concluded at 9:12 a.m.)

15

16                    C E R T I F I C A T E

17

18      I hereby certify that the foregoing is an

19   accurate transcription of the proceedings in the

20   above-entitled matter.

21

22   _06/26/2025_

23       DATE                    STEPHANIE A. McCARN, RPR
                                 Official United States Court Reporter
24                               400 North Miami Avenue, 13th Floor
                                 Miami, Florida 33128
25                               (305) 523-5518