UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:25-cv-21385-CMA

YANLI GONG, Individually and as
Personal Representative for the Estate of
Hyon Duk Shin, deceased, and as Parent
And Natural Guardian of Beneficiaries M.S. and C.S.
(minors), and Beneficiary KWANG SHIN,

    Plaintiffs,

v.

NCL (BAHAMAS), LTD., a Bermuda Corporation
d/b/a NORWEGIAN CRUISE LINES (NCL),

    Defendant.
_____/

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, NCL (Bahamas) Ltd., (hereinafter "NCL" or "Defendant"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, hereby moves this Honorable Court for entry of Summary Judgment against Plaintiff, and as grounds states as follows:

### **INTRODUCTION**

This is a maritime personal injury action brought by Yanli Gong in her individual capacity, as Personal Representative for the Estate of Hyon Duk Shin, deceased, and in her capacity as Parent and Natural Guardian of the two (2) minor children in this action, M.S. and C.S. ("Plaintiffs"), and Beneficiary Kwang Shin in which Plaintiff alleges that on March 27, 2024, her 49-year-old husband Hyok Duk Shin ("Decedent") died while at the Horseshoe Bay Beach in

Bermuda while they were passengers onboard the Norwegian *Getaway*. [D.E. 59, ¶¶ 13, 42] Defendant's SOF, ¶4.[1] Plaintiff's filed a Complaint against NCL alleging General Negligence (Count I), Negligent Failure to Warn (Count II), and Death on the High Seas Act, 46 U.S.C. Sec. 30301-30308 (Count VI). [D.E. 59], Defendant's SOF, ¶3. As further detailed below, Plaintiff's allegations are unsupported by the record evidence in this case. Accordingly, and for the following reasons, NCL respectfully moves this Honorable Court for an Order granting summary judgment.

## MEMORANDUM OF LAW

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) states, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories and admissions that demonstrate the absence of a genuine issue of material fact. *Id.* Once the party moving for summary judgment demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "come forward with specific facts that will establish a genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A mere "scintilla" of evidence supporting the non-movant's positions is insufficient; there must be sufficient evidence such that a jury could reasonably find for the nonmoving party. *Id.* Further,

---

[1] References to Defendant's Statement of Material Fact [D.E. 87] are hereinafter referred to as, "Defendant's SOF."

conclusory allegations without specific supporting facts have no probative value when deciding a motion for summary judgment. *Evers v. General Motors Corporation*, 770 F.2d 984, 986 (11th Cir. 1985); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

## II.   This Action is Governed by United States Maritime Law

This matter is subject to the general maritime law of the United States. Incidents bearing a significant relationship to traditional maritime activities are governed by maritime law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). It is well settled that the law governing passenger suits against cruise lines is the general maritime law. *See, e.g.*, Schoenbaum, Thomas J., Admiralty and Maritime Law §3-5 (4th Ed. 2004); *Keefe*, 867 F.2d at 1321. This principle extends to torts occurring at offshore locations or ports-of-call during a cruise. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006). Here, the Decedent's death occurred while a fare-paying passenger aboard the *Norwegian Escape*. [D.E. 1]. Accordingly, federal maritime law applies to the instant action.

## III.   NCL is Entitled to Summary Judgment on Plaintiff's Negligence Claims in (Counts I and II)

To establish negligence, a plaintiff must demonstrate: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Taiariol v. MSC Crociere, S.A.,* No. 0:15-cv-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016), aff'd, 677 F. App'x 599 (11th Cir. 2017) *(citing Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir. 2012)). The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence cause of action. *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on

the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment.").

### A. Duty of Care

Plaintiff improperly asserts heightened duties of care beyond the duty to warn proscribed by the U.S. general maritime law.

Maritime law is clear that a cruise line "is not the insurer of the safety of [its] passengers," and liability does not arise merely because an accident has occurred. *Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. At 41 n. 1(S.D. Fla. 1986); *Monteleone v. Bahama Cruise Line,* Inc., 838 F.2d 63, 65 (2d Cir. 1988).

For passengers going ashore, the duty of reasonable care is limited to warning of dangers that NCL knew, or reasonably should have known, existed in places where passengers were invited or reasonably expected to go. *Dudley v. NCL (Bahamas) Ltd*., 688 F. Supp. 3d 1194, 1200 (S.D. Fla. 2023) (*quoting Thompson v. Carnival Corp.,* 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016). Consistent with this framework, courts in this district have repeatedly held that attempts to impose heightened duties—those beyond the duty to warn of known dangers—are improper. *See Munday v. Carnival Corp.,* No. 16-CV-24841-KMW, 2017 WL 5591640, at 2 (S.D. Fla. July 18, 2017) (rejecting claims imposing a heightened duty of care and limiting the claim to negligent failure to warn); *Finkelstein v. Carnival Corp.,* No. 1:14-CV-24005-UU, 2015 WL 12765434, at 3 (S.D. Fla. Jan. 20, 2015).

Plaintiff's Complaint alleges that NCL was negligent in failing to cancel or modify the subject excursion, failing to recognize the strong current at Horseshoe Bay Beach, failing to recognize the strong undertow, failing to provide lifeguards, and promoting the subject area as a "more controlled environment." [D.E. 59], ¶80(a)–(e). Plaintiff also alleged, under the guise of a

failure to warn claim, that NCL failed to inspect Horseshoe Bay Beach. [D.E. 59], ¶88(a)–(d). These allegations fail as a matter of law because NCL was not required to inspect, supervise, or enforce specific safety standards for a public beach that is owned and operated by Bermuda, and there is no evidence NCL created or had notice of any unsafe conditions. *See Thompson v. Carnival Corp.,* 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016) (holding that Plaintiff's negligence claims arising out of allegations that the shipowner was required to provide a safe excursion and inspect and monitor the excursion were premised on duties not recognized under general maritime law); *Smolnikar v. Royal Caribbean Cruises Ltd.,* 787 F. Supp. 2d 1308 (S.D. Fla. 2011) (granting summary judgment on negligent selection and retention, failure to warn, and vicarious liability claims arising from independent shore excursion operator's conduct). Maritime law also does not create any obligation for shipowners to provide lifeguards at public beaches in ports of call, just as it does not require a cruise line to assign a security guard to each passenger while they are in port to protect them. To hold otherwise would render NCL an insurer of the passengers' safety and would be contrary to binding maritime law. *See Monteleone, supra.* In the instant matter, there is no record evidence of a standard in the cruise line industry requiring an inspection of beach locations in a port of call. Accordingly, NCL had no legal obligation to inspect Horseshoe Bay Beach, and, in turn, warn the Decedent that it did not inspect Horseshoe Bay Beach. Plaintiff's allegations related to duties beyond a duty to warn seek to impose duties that NCL simply does not owe to its passengers under maritime law and which, in fact, run contrary to the law. Accordingly, NCL is entitled to summary judgment on Plaintiff's negligence claims predicated on these alleged duties.

### B. NCL is Entitled to Summary Judgment as Plaintiff Has Failed to Prove that NCL had Notice of the Risk-Creating Condition.

Notice is a required element of a maritime negligence claim, such that, without it, liability cannot be imposed. *Keefe*, 867 F.2d at 1322. The governing maritime standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d 1318, 1322 (11th Cir. 1989); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir. 1990); *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1322 (S.D. Fla. 2015). Actual notice exists when the shipowner knows of the unsafe condition. *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (*citing Keefe,* 867 F.2d at 1322). Constructive notice may be shown only where the condition existed long enough to invite corrective measures or through evidence of "substantially similar incidents" where the same dangerous condition caused the prior accident. *Roberts v. Carnival Corp.,* No. 19-25281, 2021 WL 3887819, at 7 (S.D. Fla. May 25, 2021) (*quoting Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020)), aff'd, No. 21-11792, 2022 WL 2188010 (11th Cir. June 17, 2022).

In the instant matter, there is no record evidence that NCL had actual or constructive notice of the risk-creating condition—the *naturally occurring* strong current and undertow—alleged to have been the cause of Decedent's death. Defendant's SOF, [D.E. 87, ¶28]; *see also* Amended Complaint, [D.E. 59, ¶43]. Many NCL passengers have visited Horseshoe Bay Beach, yet the record is devoid of evidence of actual or constructive notice. With regard to actual notice, there is no record evidence that NCL knew of any adverse ocean conditions at Horseshoe Bay Beach on the date of Plaintiff's alleged incident. Defendant's SOF, [D.E. 87, ¶31]. The record is also devoid of evidence that Bermuda issued any advisory indicating that there were adverse ocean conditions at Horseshoe Bay Beach on the date of the Decedent's incident or that NCL received such an advisory. Defendant's SOF, [D.E. 87, ¶32]. Likewise, there is no evidence that NCL had knowledge that there were no lifeguards at Horseshoe Bay Beach.

While constructive notice may be established by evidence that a party was aware of prior substantially similar incidents, the burden to demonstrate substantial similarity rests with the party seeking to introduce the prior incident. *Croskey v. BMW of N. Am., Inc.,* 532 F.3d 511, 518 (6th Cir. 2008)(citing *Levy v. Remington Arms Co.*, 836 F.2d 1104, 1109 (8th Cir. 1988)). A prior incident is substantially similar only when it arises from the same underlying cause or risk-creating condition. *See Green v. Carnival Corp.,* 614 F. Supp. 3d 1257, 1263 (S.D. Fla. 2022) (recognizing that constructive notice may be shown only through prior incidents caused by conditions substantially similar to the incident at issue); *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of prior incidents where "none of them occurred where [the plaintiff] fell"); *Neagle v. Ill. Tool Works, Inc.*, No. 1:08-CV-2080-WSD, 2011 WL 13173913, at *4 (N.D. Ga. Feb. 14, 2011); *Bagley v. Home Depot U.S.A., Inc.*, No. 8:10-cv-1029-T-27EAJ, 2011 WL 1884146, at *3–4 (M.D. Fla. May 18, 2011). Plaintiff must show that "conditions substantially similar to the occurrence in question must have caused the prior accident . . . [and] the prior accident must not have occurred too remote in time." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir. 1988); *Roberts*, 2021 WL 3887819, at 7; *see also Cogburn v. Carnival Corp.,* No. 21-11579, 2022 WL 1215196, at *4 (11th Cir. Apr. 25, 2022)(citing *Borden, Inc. v. Fla. E. Coast Ry. Co.,* 772 F.2d 750, 755 (11th Cir. 1985) (stating constructive notice depends on whether prior incidents are sufficiently similar to allow a reasonable inference the cruise line could foresee the accident)).

In the instant matter, Plaintiff has not established that NCL was aware of any incident at Horseshoe Bay Beach related to any adverse sea conditions, let alone substantially similar incidents. *See* Deposition of Corp. Rep., at 84:16-19 [D.E. 87-7]. There is also no record evidence that any NCL passenger experienced any difficulty while swimming at Horseshoe Bay Beach at

any time prior to the subject incident. Defendant's SOF, [D.E. 87, ¶29]. Plaintiff has also failed to adduce any evidence that NCL was aware of any specific, ongoing dangers related to the ocean conditions at Horseshoe Bay Beach at any time prior to the subject incident. Defendant's SOF, [D.E. 87, ¶30]. Because Plaintiff has failed to present evidence of actual or constructive notice, summary judgment must be entered in NCL's favor on Plaintiff's failure to warn claims.

### C. NCL is Entitled to Summary Judgement as There Was No Duty to Warn Plaintiff of the Dangers Associated with Open Bodies of Water Because They Are Open and Obvious as a Matter of Law

A cruise line has "no duty to warn of dangers that [are] of an obvious and apparent nature." *See Young v. Carnival Corp.,* No. 09-21949-CIV, 2011 WL 465366, at *3 (S.D. Fla. Feb. 4, 2011) (Summary judgment granted where the plaintiff failed to establish notice of the alleged dangerous condition as risks associated with the activity were open and obvious); *see Isbell*, 462 F. Supp. 2d at 1238 (granting summary judgment where the plaintiff failed to establish notice, reaffirming that a carrier's duty to warn applies only to known dangers that are not open and obvious)*; Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. 40, 41 (S.D. Fla. 1986); "Natural bodies of water have been repeatedly deemed, as a matter of law, open and obvious dangers." *Nyazie v. Kennedy,* No. CIV. A. 97-0120, 1998 WL 633984, at *4 (E.D. Pa. Aug. 24, 1998) (emphasis added); *see also Locke v. Liquid Air Corp.*, 725 F.2d 1331 (11th Cir. 1994) ("[W]ater, including water concealing a submerged hazardous condition, is an obvious and patent danger…"); *Balachander v. NCL Ltd.*, 800 F. Supp. 2d, 1196, 1203 (S.D. Fla. 2011) ("[T]he dangers of drowning in the ocean are open and obvious as a matter of law. . . . The Court finds that NCL had no duty to warn [plaintiff] of the dangers of swimming in the ocean as a matter of law."); *Bernard v. World Learning, Inc.*, Case No. 09-20309-cv-Ungaro (S.D. Fla. June 4, 2010); *Fabend v. Rosewood Hotels and Resorts, L.L.C.*, 181 F. Supp. 2d 439 (D.V.I. 2002) (finding no duty to warn of the dangers of shore-breaking

waves); *Darby v. Societe Des Hotels Meridien,* No. 88 CIV. 7604 (RWS), 1999 WL 642877, at *3 (S.D.N.Y. Aug. 24, 1999) (finding no legal duty to warn of natural phenomena occurring in ocean beaches); *Dixon v. CSX Transp., Inc.*, 947 F. Supp. 296, 298 (E.D. Ky. 1996), *aff'd*, 134 F.3d 370 (6th Cir. 1998) (recognizing that, under Kentucky law, bodies of water pose obvious hazards); *Ex Parte Indust. Distrib. Serv. Warehouse, Inc.*, 709 So.2d 16, 20 (Ala. 1997) ("water is an open and obvious danger and, hence no duty to warn exists even when the water conceals dangers beneath the surface"); *Beresford v. Starkey*, 563 N.E.2d 116, 122 (Ind. App. Ct. 1990), *vacated on other grounds*, 571 N.E.2d (Ind. 1991) (noting that dangers inherent in a body of water are open and obvious); *Casper v. Charles F. Smith and Son*, 560 A.2d 1130, 1134 (Md. 1989) (bodies of water are open and obvious dangers for which no special warning is needed); *Waters v. U.S. Fidelity and Guar. Co.*, 369 N.W.2d 755, 758 (Wisc. Ct. App. 1985) (natural bodies of water are included in category of open and obvious danger for any person who comes upon land, be they invitees or otherwise).

Plaintiff has alleged that NCL failed to warn of the ocean conditions at Horseshoe Bay Beach. As this will be addressed more fully below in the section on causation, there is no record evidence that the Decedent drowned due to any adverse sea conditions. Notwithstanding, even assuming *arguendo* that the Decedent drowned due to a condition in the ocean--current or a wave or contact with marine life, such conditions are open and obvious as a matter of law. While such conditions are open and obvious to a reasonable person, Plaintiff also conceded that the dangers of going into the ocean were obvious to her:

> Q. Did you tell them to be careful and stick with daddy because you were aware of the dangers of the ocean?
> A. Just generally. They're young kids and this ocean, so general guidance from me is stay close with daddy and don't go too deep.
> Q. Why?
> A. That's not obvious?

> Q. It's obvious to me. Is it obvious to you?
> A. Yeah, because it's dangerous,

See Defendant's SOF [D.E. 87, ¶14].

Plaintiff has also alleged that NCL failed to warn the Decedent of the "presence of no lifeguards" at Horseshoe Bay Beach. However, this allegation also fails as the fact that lifeguards were not present at Horseshoe Bay Beach was open and obvious to a reasonable person through the ordinary use of their own senses. In fact, the Decedent and his family were at Horseshoe Bay Beach for several hours on the date of the incident; therefore, Decedent had ample opportunity to observe whether or not lifeguards were present at the beach.[2] Defendant's SOF, [D.E. 87, ¶19].

As the dangers alleged are open and obvious, NCL respectfully submits that summary judgment must be granted as to Plaintiff's failure to warn claims.

### D. Plaintiffs Claim of Failure to Warn Fails because Decedent *Was* Provided with A Warning

Plaintiff's failure to warn claim independently fails because the undisputed evidence establishes that Plaintiff and the Decedent were, in fact, warned of the water conditions and the presence of lifeguards by the Government of Bermuda. NCL owed no duty to provide additional warnings, as a warning sign was posted at the entrance to the pathway leading to Horseshoe Bay Beach. That sign expressly advised visitors of the water conditions and the presence of lifeguards. Defendant's SOF, [D.E. 87, ¶9]. This information is sufficient to place a reasonable person on notice of the conditions they would encounter.

There is no evidence that the warning sign was inadequate for its intended purpose. To the contrary, Defendant's aquatic safety expert, Michael Oostman, testified that he conducted an on-

---

[2] *See* Deposition of Yanli Gong at 67:3-11, and 74:18-25, Exhibit A to NCL's Statement of Material Facts, [D.E. 87-1].

site inspection of Horseshoe Bay Beach following the alleged incident and personally observed the warning sign at the entrance.[3] Defendant's SOF, [D.E. 87, ¶10]. Mr. Oostman testified that the warning sign located at the entrance of Horseshoe Bay Beach had been in place since at least 2018.[4] Defendant's SOF, [D.E. 87, ¶11]. He also testified that he confirmed with the lifeguard on duty, James, that the entrance sign was present on the date of Decedent's death and that, to his knowledge, the sign has always been in place.[5] Defendant's SOF, [D.E. 87, ¶12]. Prior to the date of the incident, the Decedent had previously visited Horseshoe Bay Beach in 2022. As reflected in the deposition testimony of Ms. Gong, the family traveled to Bermuda in the spring of 2022 and spent approximately two hours at Horseshoe Bay Beach during that visit.[6] Defendant's SOF, [D.E. 87, ¶7]. Since the Decedent had prior familiarity with Horseshoe Bay Beach and was provided with warnings regarding the water conditions and the presence of lifeguards, any alleged failure by NCL to provide additional warnings was not the proximate cause of the Decedent's death. Accordingly, NCL is entitled to summary judgment as a matter of law.

**V. Plaintiffs Cannot Establish Causation**

Plaintiff cannot establish causation in this case as there is no evidence establishing what condition resulted in the Decedents death. Specifically, there is no evidence in the record regarding what actually caused the Decedent to become unresponsive in the water. Numerous alternative causes could explain the Decedent's death, and there is no record evidence that the alleged risk-

---

[3] *See* Deposition of Michael Oostman at 53:4-12, Exhibit C to NCL's Statement of Material Facts, [D.E. 87-3].
[4] *See* Deposition of Michael Oostman at 59:14-22, and 134:5-23, Exhibit C to NCL's Statement of Material Facts. [D.E. 87-3].
[5] *See* Deposition of Michael Oostman at 130:22–131:18, Exhibit C to NCL's Statement of Material Facts. [D.E. 87-3].
[6] *See* Deposition of Yanli Gong at 59-60:12-12, Exhibit A to NCL's Statement of Material Facts. [D.E. 87-1].

creating condition—adverse currents—caused Decedent to become unresponsive in the water. Defendant's SOF, [D.E. 87, ¶26]. Specifically, there is not a single witness that observed the Decedent at the time he became unresponsive in the water or the moments prior. Defendant's SOF, [D.E. 87, ¶24]. No witness observed the Decedent struggle in the water at any time. For these reasons, Plaintiffs cannot establish causation, which is an essential element of their negligence claim, warranting summary judgment.

Even assuming *arguendo*, however, that the ocean conditions were dangerous on the date of the incident, Plaintiffs cannot establish that such conditions had anything to do with the Decedent becoming unresponsive in the water. Notably, Plaintiffs liability expert testified that a person could drown in any kind of water and under any conditions.[7] Defendant's SOF, [D.E. 87, ¶25].

The case of *Decastro v. Odetah Camping Resort, Inc.*, 155 A.3d 305, 309 (Conn. App. Ct. 2017) is instructive. In *Decastro*, the Appellate Court of Connecticut upheld the trial court's judgment notwithstanding the verdict, finding that because the Decedents drowning was unwitnessed, the plaintiff could not establish that the negligence of the defendant proximately caused his death. *Id.* The plaintiff's liability expert in *Decastro* was actually the same as Plaintiff's expert in this case. *Id.* at 312 ("at trial, the plaintiff presented the testimony of Gerald Dworkin ….").[8] Regarding Mr. Dworkin's testimony, the Court noted the following, "*[l]acking from Dworkin's testimony, from any other witness' testimony, or from any other evidence, is evidence of what caused the decedent to drown.*" *Id.* at 312-12 (emphasis added). The record in this case

---

[7] *See* Deposition of Gerald Dworkin at 40: 11-24, 41: 1-8 Exhibit F to NCL's Statement of Material Facts, (*hereinafter*, "Dworkin"), [D.E. 87-6].

[8] Mr. Dworkin's opinions are the subject of a pending *Daubert* motion, filed contemporaneously with the instant Motion, [D.E. 86].

lacks the same material evidence as neither Plaintiff nor any other person witnessed what caused the Decedent to become unresponsive in the water. Mr. Dworkin conceded this at his deposition. *See* Dworkin at 17:16-18. Defendant's SOF, [D.E. 87, ¶26].

Indeed, the facts in *Decastro* are nearly identical to the facts in this case. First, the factual circumstances of the decedent's death in *Decastro* mirror those in this case; "[t]he decedent's drowning was unwitnessed despite the fact that there were numerous people in the water and on the beach. Although other members of the decedent's group ... were on the beach adjacent to the swimming area, no one saw him in distress or struggling in the water. He was identified by his friends as a good or strong swimmer." *Id.* at 309. Here, as discussed, no one witnessed the Decedent become unresponsive in the water. Further, the record evidence is that numerous people were on the beach and swimming in the water and at the same time as Plaintiffs and the Decedent. Mrs. Gong testified that Decedent was known to be a good swimmer.[9] Defendant's SOF, [D.E. 87, ¶21].

Ultimately, Plaintiffs' claim that the Decedent's death was caused by dangerous ocean conditions on the date of the subject incident is entirely speculation, which is insufficient to withstand summary judgment. "Evidence, in order to warrant submission to a jury, must present something more than a theory which will permit speculation." *Firemen's Ins. Co. of Newark, N.J. v. Robbins Coal Co.*, 288 F.2d 349, 351 (5th Cir. 1961). "It is well-settled that each element, including causation, is essential to Plaintiffs negligence claim for purposes of defeating summary judgment." *Thomas v. NCL (Bahamas) Ltd.*, 13-24682-CIV, 2014 WL 3919914, at *4 (S.D. Fla. Aug. 11, 2014) (*citing Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992)).

---

[9] *See* Deposition of Yanli Gong at 16:2-3, Exhibit A to NCL's Statement of Material Facts, [D.E. 87-1].

Accordingly, Plaintiffs cannot establish that any alleged negligence of NCL was the cause of the Decedents death and NCL is entitled to summary judgment.

### VI. NCL is Entitled to Summary Judgement as to Elements of Plaintiffs Claims for Damages under DOHSA ("Death of High Seas Act")

The Court has found that the Death on the High Seas Act ("DOHSA") is the maritime law applicable in this case[10].[D.E. 38]. DOHSA does not allow for non-pecuniary damages and allows recovery of only certain categories of pecuniary damages, including net accumulations to the Estate, loss of services, and funeral expenses. However, Plaintiff has failed to adduce competent evidence to support each of the categories of recoverable pecuniary damages. First, Plaintiff has not offered admissible evidence of loss of net accumulations or loss of services. While Plaintiff has offered expert opinions regarding loss of net accumulations, those opinions were not based on a reliable methodology and are the subject of a *Daubert* motion filed contemporaneously with the instant Motion. As Plaintiff has failed to establish competent evidence, NCL is entitled to summary judgment for damages related to a loss of net accumulations and loss of services. Additionally, while Plaintiff has asserted that she is entitled to recover funeral expenses, the record evidence is that the Estate's dependents did not pay the funeral expenses.[11] Defendant's SOF, [D.E. 87, ¶34]. Rather, the funeral expenses were paid from funds derived from a GoFundMe campaign. *Id.* With few exceptions not pertinent to this case, maritime law allows only for recovery of compensatory damages. In order to recover for funeral expenses under DOHSA, those expenses must be paid by the dependents of the Decedent. *Nichols v. Carnival Corp.*, No. 1:19-CV-20836-UU, 2019 WL 11556754 (S.D. Fla. June 21, 2019). Here, the funeral expenses were paid by others who are not

---

[10] *See* Order on Defendants Motion to Dismiss Plaintiff's Amended Complaint, Exhibit H to NCL's Statement of Material Facts, [D.E. 87-8].
[11] *See* Deposition of Yanli Gong at 125:8-25, 126-127:1-15, Exhibit A to NCL's Statement of Material Facts, [D.E. 87-1].

dependents of the Decedent. Therefore, NCL is entitled to summary judgment regarding the funeral expenses category of damages. Finally, Plaintiff has claimed recovery of expenses incurred for a probate lawyer. Defendant's SOF, [D.E. 87, ¶34]. However, probate expenses are not among the enumerated categories of damages recoverable under DOHSA. Accordingly, NCL is entitled to summary judgment on this aspect of damages.

WHEREFORE, Defendant, NCL (Bahamas) Ltd., respectfully requests this Honorable Court grant Summary Judgment in its favor on all claims, and for all other relief this Court seems just and proper.

### REQUEST FOR HEARING

NCL respectfully requests a hearing on the instant Motion.

Dated: January 8, 2026
Miami, Florida

        Respectfully submitted,

        **FOREMAN FRIEDMAN, P.A.**

By:    ***/s/ Noah D. Silverman***
        Noah D. Silverman, Esq. (FBN 401277)
        nsilverman@fflegal.com
        Jeffrey E. Foreman, Esq. (FBN 0240310)
        jforeman@fflegal.com
        Brianna Rosen, Esq. (FBN 1039055)
        brosen@fflegal.com
        One Biscayne Tower, Suite 2630
        2 South Biscayne Boulevard
        Miami, FL  33131
        Tel: 305-358-6555/Fax: 305-374-9077
        *Attorneys for Defendant,*
        *Norwegian Cruise Line*