UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO.: 1:25-cv-21385-CMA

**YANLI GONG, Individually and as
Personal Representative for the Estate of
Hyon Duk Shin, deceased,
and as Parent and Natural Guardian of
M.S. and C.S. (minors), and
KWANG SHIN, Individually,**

    *Plaintiffs*,

v.

**NCL (BAHAMAS), LTD., a Bermuda Corporation
d/b/a NORWEGIAN CRUISE LINES (NCL),**

    *Defendant.*

_____/

**<u>PLAINTIFFS' RESPONDING STATEMENT OF MATERIAL FACTS</u>**

(Intentionally left blank)

Plaintiff YANLI GONG, as Personal Representative for the Estate of Hyon Duk Shin, deceased, and as Parent and Natural Guardian of beneficiaries M.S. and C.S. (minors), and beneficiary KWANG SHIN, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and the Local Rules, hereby submits Plaintiffs' Responding Statement of Material Facts:

1. **Undisputed**.

2. **Undisputed**.

3. **Undisputed**.

4. **Undisputed**.

5. **Undisputed** that the Plaintiffs had NCL "credits" to use, the family "read the excursion options" provided by NCL, learned of the Horseshoe Bay Beach destination from NCL, and subsequently chose to follow NCL's destination recommendation, but did not book transportation to NCL's recommended Horseshoe Bay Beach directly through NCL because the bus transportation was fully booked.  Gong Dep. Tr. 59:22 - 60:3 [D.E. 93-4].

6. **Undisputed** that the Plaintiffs arrived at the Horseshoe Bay Beach, recommended to them by NCL, via local transportation; disputed that the bus ride through NCL was anything more than transportation to the recommended location promoted on NCL's website.

7. **Undisputed** that, based on NCL's recommendation but without booking a bus directly through NCL, Plaintiffs visited Horseshoe Bay in 2022 for "[a]t most like two hours", as the family wanted to "explore many different places."  Gong Dep. Tr. 29:20 - 30:3 [D.E. 93-4].

8. **Undisputed**.

9. **Disputed**. Ms. Gong does not recall seeing a sign on the day of the incident, and testified she did not see one when the family visited in 2022 either.  Gong Dep. Tr. 50:4-5;10-12 [D.E. 93-4]. Also, Defendant's expert witness visited Bermuda, but 1 ½ years after Mr. Shin's drowning, and then took a picture of a sign at the beach. Oostman Dep Tr. 53:13-15 [D.E. 87-3]. It is disputed whether there was a sign on the date of Mr. Shin's drowning, and since there were no lifeguards present on that date, the family disputes there was any day-to-day information posted regarding water conditions, warnings, or weather.

10. **Disputed**. Oostman testified that he personally observed a sign structure but could not confirm what information and posters were included on the date of the incident, as discussed in Plaintiff's Daubert Motion [D.E. 85]. Defendant's expert visited the location 1 ½ years after the incident. Notably, Defendant's expert attended Horseshoe Bay Beach in September 2025—during

2

the season when lifeguards are posted—however, Mr. Shin drowned in March of 2024 before lifeguards are posted at Horseshoe Bay Beach (in late May).

11. **Disputed**. Oostman testified that he spoke to someone on the island called "James" who stated the sign was present on the date of the incident, to his knowledge. Oostman Dep. Tr. 131:15-18 [D.E. 87-3]. However, March of 2024 is not during lifeguard season, and it is not disputed that there were no lifeguards at Horseshoe Bay Beach on the date of Mr. Shin's death. Mr. Oostman also testified that though he had travelled 1100 miles to go to Bermuda and was near 6 to 7 lifeguards he only talked with "James", none others. Oostman Dep. Tr. 153:11 – 155:14. [D.E. 87-3]

12. **Disputed**. Oostman testified that he spoke to someone on the island called "James" who stated the sign was present on the date of the incident, to his knowledge. Oostman Dep. Tr. 131:15-18 [D.E. 87-3]. However, March of 2024 is not during lifeguard season, and it is not disputed that in fact there were no lifeguards at Horseshoe Bay Beach on the date of Mr. Shin's death.

13. **Undisputed**.

14. **Disputed**. Ms. Gong testified that the dangers generally of the ocean were obvious to her, but she was not aware of the extent of the danger posed by the waters at Horseshoe Bay Beach, testifying that she believed it to be a "safe", "family" activity, and given the beach was recommended by NCL, it was a beautiful day, and there were crowds of people present. Gong Dep. Tr. 48:4-14; Gong Dep. Tr. 55:5-8. [D.E. 93-4]

15. **Undisputed**.

16. **Undisputed**.

17. **Undisputed**.

18. **Undisputed** that Ms. Gong did not *personally* observe Mr. Shin's distress.

19. **Undisputed**.

20. **Disputed**. The testimony cited pertains to whether Ms. Gong had any questions about the deposition process before it began. While Ms. Gong did not personally observe the individuals in distress, she was told about both girls by her sons. Gong Dep. Tr. 44:2-9 [D.E.93-4]. Other people on the beach also advised Mrs. Gong that they had seen her husband go out to save someone. Gong Dep. Tr. 88:17 – 89:9 (recalling "tons of witnesses there saying he went to rescue her")[D.E. 93-4].

3

21. **Disputed**. *See* Plaintiffs' response to Paragraph 20.

22. **Undisputed** that of the hundreds of people at the beach, Ms. Louka did not personally observe Mr. Shin until he was floating on the surface.

23. **Undisputed**. Ms. Watlington observed two other individuals struggling due to the ongoing rip currents while attempting to recover Mr. Shin. Watlington Dep. Tr. 78:5-10 [D.E. 8-5]. Further, Ms. Watlington had to deal with rip currents while trying to bring in Mr. Shin. Watlington Dep. Tr. 57:21 - 58:3 [D.E. 87-5].

24. **Disputed**. The children saw their father rescue a girl earlier that day, and then watched him go out a second time to rescue another girl. Gong Dep. Tr. 44:2-9 [D.E. 93-4]. Ms. Gong also recalls other people at the beach who witnessed Mr. Shin go out to save the girl before drowning. Gong Dep. Tr. 88:17 - 89:9 [D.E. 93-4].

25. **Undisputed** that a person could drown in any water conditions, which is irrelevant to the fact that the infamous rip currents at Horseshoe Bay Beach ultimately contributed to Mr. Shin's drowning death, as noted in multiple governmental State Department warnings about Horseshoe Bay Beach.

26. **Disputed**. In the cited testimony, Expert Dworkin could not personally identify the name of a witness that observed how Mr. Shin became unresponsive, but the presence of rip currents was noted, including that Ali Watlington struggled with rip currents in retrieving Mr. Shin. Dworkin Dep. Tr. 154:7-11 [D.E. 86-7].

27. **Disputed**. Defendant NCL's bald assertion that it had no notice will be refuted in Plaintiffs' response statement of facts below, and the corresponding opposing memorandum of law, to include multiple State Department warnings, Newspaper articles regarding drownings at Horseshoe Bay Beach, on-line postings by cruise ship passengers about Horseshoe Bay Beach on for instance Trip Advisor, and NCL was personally notified by a prior NCL passenger of the dangerous nature of Horseshoe Bay Beach.

28. **Disputed**. Defendant NCL's bald assertion that it was not aware of any risk creating conditions will be refuted in Plaintiffs' response statement of facts below, and the corresponding opposing memorandum of law, to include multiple State Department warnings, Newspaper articles regarding drownings at Horseshoe Bay Beach, on-line postings by cruise ship passengers about Horseshoe Bay Beach on for instance Trip Advisor, and the fact that NCL was personally notified by a prior NCL passenger of the dangerous nature of Horseshoe Bay Beach.

29. **Disputed**. As detailed in Plaintiffs' additional facts below, several cruise passengers have drowned at Horseshoe Bay Beach, some of whom may have been NCL passengers given it is a frequent port of call. Moreover, a confirmed NCL passenger drowned at Royal Naval Dockyard in Bermuda in September of 2015. Exhibit A. An NCL passenger also gave direct written notification to NCL and his written statement was provided to NCL about the dangerous nature of Horseshoe Bay Beach. (Produced by NCL after a Motion to Compel.) Exhibit G.

30. **Disputed**. Defendant NCL's bald assertion that no dangers were present will be refuted in Plaintiffs' response statement of facts below, and the corresponding opposing memorandum of law, to include multiple State Department warnings, Newspaper articles regarding drownings at Horseshoe Bay Beach, on-line postings by cruise ship passengers about Horseshoe Bay Beach on for instance Trip Advisor, and the fact that NCL was personally notified by a prior NCL passenger of the dangerous nature of Horseshoe Bay Beach.

31. **Disputed**. Defendant NCL's bald assertion that it had no notice will be refuted in Plaintiffs' response statement of facts below, and the corresponding opposing memorandum of law, to include multiple State Department warnings, Newspaper articles regarding drownings at Horseshoe Bay Beach, on-line postings by cruise ship passengers about Horseshoe Bay Beach on for instance Trip Advisor, as well as the fact that NCL was personally notified by a prior NCL passenger of the dangerous nature of Horseshoe Bay Beach.

32. **Disputed**. The Government of Bermuda had issued countless warnings concerning the persistent dangers at Horseshoe Bay Beach, detailed below. In addition, the Bermuda Weather Service report called for "near gales" in the days surrounding the incident. Exhibit C. Plaintiffs' water safety expert noted that NCL also had notice of increased winds—evidenced in NCL's ship Captain's log that winds at time of Mr. Shin's death made conditions more favorable to rip currents. Dworkin Depo Tr. 98:11-19; 99:2-5 [D.E. 86-7].

33. **Undisputed** that the Death on the High Seas Act governs the instant action.

34. **Disputed**. Ms. Gong testified that she had to pay for funeral expenses with credit cards, which were later reimbursed via GoFundMe donations. Gong Dep Tr. 126:19-24 [D.E. 93-4].

35. **Undisputed**.

# ADDITIONAL FACTS

5

36. In early 2024, the Shin family looked to take advantage of the upcoming spring break of their children, M.S. and C.S. Because of the kids and Ms. Gong's elderly mother-in-law Kwang Shin (Mr. Shin's mother), they looked for a "safe trip" and decided on a Norwegian cruise as a "safe choice . . . fit for all age groups." Gong Dep. Tr. 58:4-20 [D.E.93-4]. The Shin family trusted that Norwegian, as the entity bringing them to the foreign country of Bermuda, would only bring them to safe places, or at minimum warn them if the destination was not safe. *Id.*

37. The family chose to visit Horseshoe Bay Beach while in Bermuda as the NCL description made it "sound like a safe place, family safe place." Gong Dep. Tr. 48:4-14 [D.E. 93-4].

38. The NCL description Ms. Gong reviewed identified Horseshoe Bay Beach as a "beach/swimming" activity classified by NCL as "easy", the least difficult rating NCL has for excursions, encouraging passengers to "swim in the crystal clear water." Exhibit D.

39. Ms. Gong testified that upon reviewing the promotion of Horseshoe Bay Beach by NCL, Ms. Gong concluded the following concerning its safety:

> They said **everyone can go. So they don't have any restrictions**, like, people have wheelchair or have heart condition, they didn't mention anything. Because if you look through the excursions, some excursions calling for you have to have health – good health, this and that because, you know, it's a hard kind of a trip, that kind of thing. **But the Horseshoe Bay one was a really family friendly excursion**.

Gong Dep. Tr. 55:9-18 (emphasis added) [D.E. 93-4].

40. When they arrived at the beach that day, the weather was "stunning" and "sunny", hiding the abnormally dangerous conditions of the waters. Watlington Dep. Tr. 114:10-13 [D.E. 87-5]; Gong Dep. Tr. 60:18-22 [D.E. 93-4].

41. While it appeared to be a calm, sunny day, Bermuda Weather Service Climatology Written Summary states that "[d]uring the late month the influence of **a complex low-pressure system was experienced, mostly between the 24th and 29th.** As a slow-moving cold front passed over the area on the 24th, heavy rainfall and **near gales were noted** . . . ." Exhibit C.

42. While on the beach, Ms. Gong testified that she does not recall seeing any sign about rip currents or undertow, or any sort of flags on the beach indicating dangerous conditions. Gong Dep. Tr. 50:4-5;10-12 [D.E. 93-4]. We know there would be no day-to-day "conditions" signs posted because lifeguard season did not start until late May and Mr. Shin drowned in late March.

43. A prior NCL passenger, Sis-Obed Torres, who had visited Horseshoe Bay Beach in 2015 with his wife and two youngest sons after reviewing NCL's Horseshoe Bay Beach recommendations, testified it was a "bright sunny day" when he visited as well, and he did not recall seeing any warning signs posted "at or near Horseshoe Bay Beach." Torres Dep. Tr. 9:6-22; 10:21-22; 12:4-8; 13:15-18; 14:12-15; 28:14-21. Exhibit E. Mr. Torres, as an NCL passenger, also presumed that NCL would not recommend dangerous locations. *Id.* at 13:3-13.

44. When Bermudian Ms. Watlington, the Good Samaritan who ultimately retrieved Mr. Shin's body, arrived at the beach later, she also did not witness any flags out. Watlington Dep. Tr. 37:7-9 [D.E. 87-5]. Neither did she see any signs posted out by the water regarding rip currents. Watlington Dep. Tr. 74:13-15 [D.E. 87-5].

45. Further, Plaintiff Ms. Gong testified she believed "based on [] common judgment, if there are hundreds of people in the water that day, yes, I think just like other people, yes, I thought it's safe." Gong Dep. Tr. 48:4-14 [D.E. 93-4].

46. Bermudian Ali Watlington similarly testified she "expect[ed] to see lifeguards" that day when she first arrived at the beach, given the "hundreds of people on the beach that day." Watlington Dep. Tr. 44:12-18 [D.E. 87-5].

47. M.S. testified he thought there were lifeguards that day (these individuals were in fact simply beach attendants renting towels and chairs), because there were several individuals in uniform red shirts, only adding to the perception of safety at this NCL-recommended beach. M.S. Dep. Tr. 27:6-16. Exhibit F.

48. While on the beach, Mr. Shin saved a girl earlier that day who was struggling in the water, bringing her back to the beach. Gong Dep. Tr. 44:1-9[D.E. 93-4].

49. A little while later, M.S. and C.S. ran to Ms. Gong crying, stating that Mr. Shin, their father, had went out to save another girl, telling the children to stay on the beach. Gong Dep. Tr. 44:2-9 [D.E. 93-4]; M.S. Dep. Tr. 9-11. Exhibit F.

50. Upon investigation, other people on the beach also advised Mrs. Gong that they had seen her husband go out to save someone. Gong Dep. Tr. 88:17 – 89:9 (recalling "tons of witnesses there saying he went to rescue her")[D.E. 93-4]. Tragically, Mr. Shin passed while saving this girl.

51. Bermudian Ali Watlington, who happened to be overlooking Horseshoe Bay Beach around this time, generously offered her services to retrieve Mr. Shin, requiring her to swim parallel to the shore due to the ongoing rip currents Mr. Shin had been battling, which even

7

experienced Ms. Watlington found to be "extremely difficult." Watlington Dep. Tr. 57:21 - 58:3. [D.E. 87-5]

52.     This tragedy was avoidable in that Defendant NCL had been explicitly advised of the dangerous conditions of this beach by previous NCL passengers, at least as early as October 22, 2015, when cruise passenger Sis-Obed Torres filed a written complaint at the Guest Service desk concerning Horseshoe Bay Beach, stating:

> Guest came by GS Desk informing that the beach in Horseshoe Bay, did not seem for them enough [sic] safe, just because, today, when they were at the beach (beach was crowded), **3x people there were in danger to drown in the water and there was not enough Bermudian lifeguards, that could safe [sic] them**. Guest is saying that if not the crew that was there those people would drown. Guest does not have anything against NCL, they would like just to inform about this someone that would take care [sic], so then there will be more lifeguards, that would take care of people. Exhibit G.

53.     Moreover, at least as early as June 15, 2023, the United States State Department published the following warning pertaining to Bermuda:

> **Beach Safety**: Swimming areas at some popular beaches around Bermuda can have dangerous rip currents . . . **Wind, waves, the change of the tide, the slope of the beach, and other factors can cause strong currents and difficult swimming conditions to be present in the water even on the calmest days. U.S. citizens have drowned in Bermuda due to these conditions** . . . ." Exhibit H.

54.     On August 22, 2022, after the drowning death of cruise passenger Judy Severe at Horseshoe Bay Beach, Bermuda's Minister of National Security Michael Weeks issued a public statement concerning the Horseshoe Bay Beach incident, stating in relevant part:

> I also want to take this opportunity to urge residents and visitors to exercise caution and vigilance while in and around the Island's waters—especially when many of us are enjoying the summer beach weather. **People should be particularly vigilant over the potential for unpredictable riptides in our waters—especially on South Shore beaches.** Exhibit I.

55.     The United Kingdom maintains an advisory for Bermuda, its overseas territory, warning that "[t]here are strong rip currents in many places across Bermuda. **Most people in Bermuda do not swim in the sea until after Bermuda Day in late May.**" Exhibit J.

56.     NCL's Corporate Representative testified in deposition that if there were a department within NCL that would receive the plethora of government advisories regarding Horseshoe Bay Beach, it would be the department in which Intelligence Manager Shayna

8

Middleman worked, which the Corporate Representative could not recall the name of. CR Dep. Tr. 77:9-14; 91:18-25. Exhibit K.

57. Pre-dating Mr. Shin's death, NCL's Intelligence Manager, Shayna Middleman, testified in deposition that "daily responsibilities [of this department] include collecting aggregate information and reporting on incidents that would affect the physical security of assets or personnel", Middleman Dep. Tr. 12:16-22 [D.E. 94-3] and rip currents or lack of lifeguards would not pertain to "physical safety of a guest, asset, or crew as it relates to security." Middleman Dep. Tr. 39:2-9 [D.E. 94-3].

58. With regard to how the only department that might receive government advisories would become aware of a dangerous condition affecting passengers at an excursion location, Middleman testified:

> "**Q:** How do you find out if there is a dangerous condition at a location that an NCL ship stops at?
>
> **A:** With regard to incidents outside of that realm, my department is not specifically looking for those incidents."
>
> Middleman Dep. Tr. 16:1-10; 21:1-13. [D.E. 94-3]

59. NCL's Intelligence Manager Middleman did admit that they have a third-party aggregator service, Data Miner, which the intelligence department *could* have searched for such risks, but such a search was *never* conducted. Middleman Dep. Tr. 73:2-5. [D.E. 94-3]

60. However, NCL knew that drowning was a real risk with water attractions, as well before Mr. Shin's death, NCL implemented certified lifeguards at its onboard pools as of 2017, even though pools present a much safer environment than open water. Exhibit L; Exhibit M. This program was instituted after several drowning deaths onboard, including a 2014 pool drowning on the Norwegian *Getaway* and a 2015 drowning on the Norwegian *Gym*. *Id.*

61. NCL also recognizes the need to employ lifeguards at its private island, Great Stirrup Cay. Oostman Dep. Tr. 46:14-25.

62. As to Horseshoe Bay Beach specifically, articles such as the U.S. News Travel Section on Horseshoe Bay Beach, also warned of the dangerous conditions stating, "travelers also warn that the ocean's waters can be rough with a strong undertow." Exhibit N.

63. The Bermudian newspaper published an article about Horseshoe Bay warning of rip tides and noting that this was "typical of our south shore beaches." Exhibit O.

64. Visitors of Horseshoe Bay Beach have also posted multiple reviews on TripAdvisor, a common travel review website, warning of this beautiful beach's deceptively dangerous waters. Exhibit P.

> **October 2012/Username: Fallbeach**: "It is very rough, be careful with young kids, there is an undertow and it's easy to get knocked over."
> **October 2012/Username: ImnowaHoosier**: "Spoke to the lifeguard after seeing her rescue someone and was informed that it was her fourth rescue that day. I guess if you want to risk your life, at least do it here where they can rescue you!!"
> **November 2013/Username: Romany**: "The south shore is unprotected by reefs so the waves are really strong with an undertow. It was quite nerve-wracking to watch the kids getting knocked over and pulled under."
> **October 2014/Username: Peter I**: "I used to live here . . . most times I went [the] sea was rough. . . ."
> **July 2017/Username: DeeA**: "The water was crystal clear and postcard blue...but the life guards were busy with the rip currents."
> **September 2017/Username: tomrudz**: "The water was very rough, and within a short while after we arrived, they closed the water due to riptides"
> **June 2019/Username: SA02138**: "The lifeguard keeps a careful watch on swimmers who brave the riptide."
> **July 2022/Username: scubagirlNYC**: "When we visited in July the water was closed due to rip currents and Portuguese Man of War"
> **September 2022/Username: Roberto D**: "I believe that they needed more hands on deck for the amount of people visiting the beach at once."
> **June 2023/Username: AustintoBoston**: "The water was rough on the day I went, so nobody was allowed to swim."
> **August 2023/Username: Karen P**: "I got knocked down by a rogue wave and nearly lost my hat and sun glasses. Same for everyone else."

65. All these warnings were not without reason, in that less than 2 years before Mr. Shin died of drowning, cruise ship passenger Judy Severe died, on August 21, 2022, of drowning in Horseshoe Bay Beach's waters, was taken to King Edward VII [Memorial Hospital], and subsequently pronounced dead. Exhibit Q, Exhibit R.

66. A couple years before that, on June 8, 2018, American Jacolbe Fleming was "swimming at Horseshoe Bay Beach" when "he ran into difficulty in the water", was "subsequently taken to the hospital" and later "pronounced dead" due to drowning. Exhibit S, Exhibit T.

67. American citizen Frank D'Angelo drowned while snorkeling at Horseshoe Bay Beach on July 17, 2017, was rushed to King Edward VII Memorial Hospital, and subsequently pronounced dead). Exhibit U, Exhibit V.

10

68. Even as far back as August 27, 2012, the Bermuda Police issued a report of a near drowning of a swimmer at Horseshoe Bay Beach "in apparent difficulty from the sea" requiring rendering of CPR, and medical attention at King Edward VII Memorial Hospital), Exhibit W, Exhibit X.

69. Bermuda local citizen Ali Watlington, who recovered Mr. Shin's body, testified in deposition that locals "avoid the south shore beaches because of dangerous currents and riptides." Watlington Dep. Tr. 17:1-3 [D.E. 87-5].

70. Ms. Watlington explained that "most locals are aware of someone or people or persons who have gotten into difficulty, whether that's through the newspaper, through other people talking or witnessing it themselves, or being the person who got into trouble at the beach. It's discussed." Watlington Dep. Tr. 17:5-15 [D.E. 87-5].

71. Just considering personal knowledge alone, Ms. Watlington testified she could think of at least 30 occasions where she was aware of individuals getting into trouble due to rip currents at Bermuda's beaches. Watlington Dep. Tr. 79:2-14 [D.E. 87-5].

72. Only a matter of months after Mr. Shin's death, cruise passenger Jamie Lambros drowned at Horseshoe Bay Beach in October of 2024, under almost identical conditions, while rescuing a couple and their girl that were caught in the beach's waters. Exhibit Y.

73. Lambros and his cousin considered themselves "strong swimmers", similar to Mr. Shin, but nevertheless struggled due to the water conditions. *Id.*

74. Like Mr. Shin, Lambros was brought on a surfboard to shore, where medics unsuccessfully attempted to revive him. *Id.*

75. Local Mark Pettingill, a regular at the beach, observed Lambros recovery and stated, "there appears to be a death a year at the beach, frequently involving tourists." *Id.* Pettingill further observed, "I have been struck in the past by the fact that we can have cruise ships in and a thousand people on the beach, and there are no lifeguards." *Id.*

76. Including Mr. Shin, Ms. Watlington observed three people in less than an hour that were caught in rip currents at the Beach that day while she was there rescuing Mr. Shin. Watlington Dep. Tr. 78:5-10.

77. Ms. Watlington testified based on her experience that persons without ocean experience and especially non-Bermudians visiting the island would be even less likely to appreciate the danger of the water as it appeared that day. Watlington Dep. Tr. 81:3-7; 81:22 - 82:3

[D.E. 87-5]. Ms. Watlington was only able to observe the rip current given her vantage point 300 feet above the beach, where she observed two distinct rip currents. Watlington Dep. Tr. 42:2-14 [D.E. 87-5]

78. The cause of death was confirmed to be drowning. See [D.E. 86-9 and 86-10]..

Because there are multiple genuine issues of material fact supporting each element of Plaintiffs' claims, NCL's summary judgment should be denied.

**DATED**: January 22, 2026.

/s/ Frank D. Butler, Esq.
Frank D. Butler, Esq.
FBN: 940585
fdblawfirm@aol.com
Jana Ranieri Cortina, Esq.
FBN: 771740
JCortina@fightingforfamilies.com
Ivan D. Smerznak, Esq.
FBN: 1039159
ivan@fightingforfamilies.com
**Frank D. Butler, P.A.**
10550 US Highway 19 North
Pinellas Park, FL 33782
Phone: 727-399-2222
Fax: 727-399-2202
Service: courtdocserve@fdblawfirm.com
Secondary: kallen@fightingforfamilies.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2026, the foregoing was filed with the Clerk of the Court via CM/ECF and served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Frank Butler, Esq
Frank D. Butler, Esquire